IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

MICHAEL S. McCRILLIS                                                                              PETITIONER

v.                                        NO. 2:05CV00179 HDY

LINDA SANDERS, Warden, FCI                                                                  RESPONDENT
Forrest City, Arkansas

MEMORANDUM OPINION AND ORDER

BACKGROUND. Petitioner Michael S. McCrillis ("McCrillis") represents, and the Court accepts as true, that in July of 2002, he was sentenced in the United States District Court for the Northern District of Mississippi to twenty-four months in the custody of the Federal Bureau of Prisons ("BOP"). Following his sentencing, he came to be incarcerated at FCI Forrest City in Forrest City, Arkansas.

FEDERAL COURT SUBMISSIONS. In July of 2005, McCrillis commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged the following in his petition:

> Petitioner has been informed that he will only be eligible to serve the last ten percent of his sentence in a CCC. Petitioner['s] current CCC transfer date is still pending. If in the event this petition is granted, Petitioner will be eligible in the early part of February, 2006.

> Petitioner challenges the [BOP's] interpretation ... of 18 U.S.C. 3624(c), the statute that governs the transfer of inmates to [CCC] prior to release from imprisonment. He contends he is entitled to serve the last six months of his sentence in a CCC, for he will [be] eligible in the early part of February, 2006. He argues the decision in Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004), prevents the BOP from interpreting the statute in this manner, and the application of this interpretation to him violates the Ex Post Facto Clause of the Constitution.

See Document 2 at 1-2. McCrillis noted in a supplement to his petition that he has not attempted to exhaust his administrative remedies because the administrative process would not be completed until after he expects to become eligible for entry into a CCC.

Respondent Linda Sanders ("Sanders") thereafter filed a response to McCrillis' petition. She first maintained that he improperly filed his petition pursuant to 28 U.S.C. 2241; she represented that he should have instead filed it as a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. 2255. Sanders next maintained that McCrillis failed to state a claim for relief because he has no constitutional right to a place of incarceration. She last maintained that he failed to state a claim for relief because the new community corrections center ("CCC") placement policy promulgated by the BOP is consistent with the relevant statutes and case law and is a permissible interpretation of 18 U.S.C. 3621(b) and 18 U.S.C. 3624(c).

McCrillis subsequently filed a reply to Sanders' submission. He alleged in sum that he was seeking a CCC placement beginning "February 13, 2006, six months prior to his August 13, 2006, release date." See Document 9 at 5.

PRELIMINARY MATTERS. Before addressing McCrillis' petition, the Court makes note of three preliminary matters. First, a prisoner may attack the execution of his sentence by means of a petition filed pursuant to 28 U.S.C. 2241 in the district of his incarceration. See Matheny v. Morrison, 307 F.3d 709 (8th Cir. 2002). The Court understands "execution" to mean the manner in which a sentence is actually served. See United States v. Peterman, 249 F.3d 458 (6th Cir. 2001). For example, a petition filed pursuant to 28 U.S.C. 2241 is appropriate to challenge "calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole, ... or conditions of confinement, ..." See Poindexter v. Nash, 333 F.3d 372, 377 (2nd Cir. 2003).

In the petition at bar, McCrillis challenges the BOP's interpretation of 18 U.S.C. 3624(c) and, in turn, the decision of the BOP to delay his entry into a CCC. The Court is convinced that his challenge involves a challenge to the execution of his sentence. He has therefore properly filed his petition pursuant to 28 U.S.C. 2241.

Second, a prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). A prisoner aggrieved by an action of the BOP is required to present his challenge to the BOP before commencing a proceeding like the one at bar. See Id. See also 28 C.F.R. 542.10-16 (1997). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile.

For the reason outlined by United States District Judge Jennifer B. Coffman in Colton v. Ashcroft, 2004 WL 86430 (E.D.KY January 15, 2004), the Court finds that requiring McCrillis to exhaust his administrative remedies would be futile.[1] Specifically, the BOP has taken a clear, consistent, and widespread stand against McCrillis' position.

Third, McCrillis represents that his "current CCC transfer date is still pending." See Document 2 at 1. He nevertheless represents that he has been told he will only be eligible to serve the last ten percent of his sentence, or approximately two and one-half months, in a CCC, not the six months he maintains he is entitled to serve. For purposes of this Memorandum Opinion and Order, the Court accepts the foregoing as true.

BOP POLICY CHANGES AND RESULTING LITIGATION. The proceeding at bar is better understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy. Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). This policy was particularly favorable to a prisoner with a relatively short sentence, like McCrillis, because it allowed the prisoner to serve a significant portion of his sentence in a CCC.

---

[1] In that case, Colton took the position that exhaustion would be futile because an appeal would ultimately be decided by officials in the same office who issued the "new" interpretation of 18 U.S.C. 3621 and 18 U.S.C. 3624 in the first place. He additionally maintained that it would be futile to require exhaustion as a prerequisite to addressing his claim because the BOP had made such a clear, consistent, and widespread stand against his request. Judge Coffman agreed.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence." See Cohn v. Federal Bureau of Prisons, 2004 WL 240570 at 1 (S.D.N.Y. 2004). "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the lesser of (i) the last ten percent of the sentence or (ii) six months." See Cato v. Menifee, 2003 WL 22725524 at 1 (S.D.N.Y. 2003). [Emphasis in original]. Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

The United States Court of Appeals for the Eighth Circuit addressed the OLC's memorandum opinion and the BOP's application of the memorandum opinion in Elwood v. Jeter. In that decision, the Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to <u>Elwood v. Jeter</u>, the BOP adopted a new CCC placement policy on February 14, 2005 ("the February 14, 2005, policy").  The relevant portions of the February 14, 2005, policy provided as follows:

> **570.20.  What is the purpose of this subpart?**
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> **570.21.  When will the Bureau designate inmates to community confinement?**
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority …

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served.  The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

The February 14, 2005, policy spawned significant litigation, including much within this district. In July of 2005, United States District Judge George Howard, Jr., addressed a challenge to the policy in <u>Fults v. Sanders</u>, 2:05CV00091. He found that the policy was invalid because although it purported to be a "categorical exercise of discretion," it was actually not. "It merely repackaged the December 2002 blanket rule that was rejected in <u>Elwood</u>." See <u>Fults v. Sanders</u>, 2:05CV00091, Document 6 at 8.

The undersigned has also had several occasions to address the February 14, 2005, policy. In every instance, the undersigned has followed Judge Howard's lead and found that the policy was invalid. The undersigned will do likewise in this proceeding.

<u>CONCLUSION AND REMEDY</u>. Given the foregoing, the Court finds that the February 14, 2005, policy is invalid. McCrillis' petition for writ of habeas corpus is granted. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring McCrillis to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place McCrillis in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.[2]

---

[2] In light of the fact that the petition has been granted, there is no need to address any of McCrillis' remaining arguments.

IT IS SO ORDERED this __7___ day of October, 2005.

_____
UNITED STATES MAGISTRATE JUDGE